Opinion filed April 7,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00310-CR 

                                                    __________

 

                            ROCKY
DEE HIDROGO, JR., Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 220th District Court

                                                        Comanche
County, Texas

                                            Trial Court
Cause No. CCCR-08-03104

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
jury convicted Rocky Dee Hidrogo, Jr. of the offense of capital murder for killing
Glenn Bundy while in the course of burglarizing his home.  The State waived the
death penalty, and the trial court assessed appellant’s punishment at
confinement for life without parole.  We affirm.  

            Appellant
does not challenge the sufficiency of the evidence.  The evidence showed that,
on July 5, 2008, Eddie Ray Jr. and appellant committed five burglaries in the
rural area near the victim’s house.  Eddie testified at trial and admitted he
was involved in the burglaries, including the burglary of the victim’s house. 
Eddie said he dropped appellant off outside the houses, left, and came back to
pick appellant up a short while later.  When Eddie picked appellant up from the
victim’s house, appellant had a shotgun and a .32 caliber revolver, which he
had taken from the victim’s home.  Appellant told Eddie that he had shot and
killed a man in that house.  The victim was later found lying in his bed with a
single gunshot wound to the head from a .32 caliber bullet.  Crime scene
evidence revealed that the victim was asleep when he was shot.  A shotgun
identified by serial number as the victim’s missing shotgun was recovered after
Eddie led police to the location where Eddie had discarded it.

            On
appeal, appellant presents four issues – all challenging evidentiary rulings
made by the trial court.  A trial court’s ruling admitting or excluding
evidence is reviewed on appeal for abuse of discretion.  Ramos v. State,
245 S.W.3d 410, 418 (Tex. Crim. App. 2008).  The ruling will be upheld on
appeal if it is reasonably supported by the record and is correct under any theory
of law applicable to the case.  Id.  

            In
his first issue, appellant contends that the trial court abused its discretion
in excluding evidence of text messages that pointed to a third party as the
killer.  The text messages that appellant sought to introduce had been sent to
appellant’s wife’s niece, Paige Clark, from a phone belonging to Ryleigh
LeFlame.  According to Clark’s mother, who is appellant’s sister-in-law, the
text messages from LeFlame stated that Brian Ray, Eddie’s brother, had claimed
some involvement with Eddie in the victim’s murder.  Clark testified that, in
one of the messages, LeFlame stated that Brian had told her “that he was there
that day and he shot the dude.”  Appellant attempted to introduce evidence of
the text messages through various witnesses who had read the messages.  The
State objected on hearsay grounds, and the trial court sustained the objections.

Citing
Chambers v. Mississippi, 410 U.S. 284 (1973), and Miller v. State,
36 S.W.3d 503 (Tex. Crim. App. 2001), appellant asserts that the exclusion of
the exculpatory text-message evidence denied him the ability to present a
defense at trial.  We disagree.  First, we note that the courts in both cases recognized
that a defendant has a fundamental right to present evidence of a defense as
long as the evidence is relevant and is not excluded by an established rule of procedure
or evidence designed to assure fairness and reliability.  Chambers, 410
U.S. at 302; Miller, 36 S.W.3d at 507.  The Court in Chambers
determined that the hearsay rule may not be applied mechanistically to defeat
the ends of justice.  410 U.S. at 302.  The Court held that Chambers was denied
a fair trial by the exclusion of hearsay that constituted a declaration against
penal interest (though Mississippi had no hearsay exception for declarations
against penal interest at that time) and bore persuasive assurances of
trustworthiness.  Id. at 299, 302.  In the present case, the text
messages were double hearsay, and the proposed testimony of Clark and others
who read the messages bore no such assurance of trustworthiness.  

Second,
the application of the hearsay rule to the present case did not deny appellant
the opportunity to present his defense.  Had appellant sought to introduce
Brian’s out-of-court statements through LeFlame, the evidence would have been
admissible under Tex. R. Evid. 803(24)
as statements against interest.  The trial court permitted Leonard
Stockinger to testify that he was at LeFlame’s house and heard Brian admit to
being present when the victim was murdered.  According to Stockinger, Brian
said he was with Eddie and appellant at the time of the offense, but Brian did
not say he shot the victim – only that he spit on the victim.  However, there
was no such hearsay exception available for the testimony of witnesses such as Clark
and her mother because they did not hear Brian’s out-of-court statements; they
merely read LeFlame’s text messages about Brian’s statements and attempted to
testify regarding the content of LeFlame’s out-of-court statements.  Appellant
was not denied the ability to present a defense; he could have called LeFlame
as a witness.  We hold that the trial court did not abuse its discretion in
excluding the hearsay testimony regarding the text messages.  Appellant’s first
issue is overruled.  

            In
the second issue, appellant argues that the trial court abused its discretion
in excluding evidence concerning the victim’s “involvement with women’s
underwear, condoms, and pornographic movies.”  Appellant asserts that the
excluded evidence tended to show that the victim had a secret life, that
something other than burglary was possibly involved, and that somebody else
committed the murder.  Nothing in the record suggests that the excluded
evidence was relevant to the burglary or the victim’s death.  Neither the
victim’s character nor his alleged secret life was shown to be relevant to this
case.  The trial court did not abuse its discretion in excluding such
evidence.  See Tex. R. Evid.
401, 402, 404(a).  Moreover, the trial court permitted appellant to introduce
evidence that the victim was clad only in pink panties at the time of his
death, and even though the trial court had ruled that the other evidence was
not admissible, Texas Ranger Jess Ramos subsequently testified in the jury’s
presence that he collected condoms and “porn” videotapes from the victim’s
house.  Appellant’s second issue is overruled.  

            In
his third issue, appellant contends that the trial court abused its discretion
in admitting into evidence a recording of the sheriff’s interview of appellant,
which contained evidence of four extraneous burglaries.  During his interview,
appellant admitted committing four extraneous burglaries, but he denied any
involvement with the burglary or murder at the victim’s house. Appellant
objected that the extraneous offense evidence was inadmissible under Tex. R. Evid. 404(b).  

            When
appellant made his objection, other witnesses had already testified about the
extraneous offenses.  The sheriff had testified that numerous items stolen
during the extraneous burglaries were found during a search of appellant’s
residence.  Brian had testified that Eddie and appellant were in possession of
stolen items on the night of the offense.  Eddie had testified in detail about
the events of that night, which included a total of five burglaries, and
appellant’s involvement in those burglaries.  Because appellant did not object
to the earlier testimony regarding the extraneous burglaries, appellant waived
this issue.  See Tex. R. App. P.
33.1; Etheridge v. State, 903 S.W.2d 1, 14 (Tex. Crim. App. 1994).  

            Furthermore,
the trial court did not abuse its discretion in determining that evidence of
the other burglaries was admissible under Rule 404(b).  Under Rule 404(b),
evidence of an extraneous offense is inadmissible to show action in conformity
with bad character, but it may be admissible for some other purpose, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident.  When identity is an issue, as it was in
this case, extraneous offense evidence may be admitted to prove identity if the
extraneous offense is so similar to the offense at issue that the offenses are
marked as the accused’s handiwork.  Lane v. State, 933 S.W.2d 504, 519
(Tex. Crim. App. 1996).  Sufficient similarity may be shown by proximity in
time and place or by a common mode of committing the offenses.  Id. 
In this case, the burglaries were committed on the same evening as the present
offense in a rural area in close proximity to the victim’s house.  All five
entries were similar, and none of the houses were ransacked.  The offense at
issue and the extraneous offenses were sufficiently similar for the trial court
to admit the extraneous offense evidence to prove identity.  See Harvey v.
State, 3 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).
 Appellant’s third issue is overruled.  

            In his
final issue, appellant argues that the trial court abused its discretion in
admitting DNA evidence that was not shown to be sufficiently reliable.  We
disagree.  In its position as the gatekeeper of scientific evidence, the trial
court has discretion in determining the relevance and reliability of expert
testimony. Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).  When
the subject of the expert’s testimony is “hard” scientific knowledge, the basis
of that testimony must be grounded in accepted methods and procedures of
science and meet three criteria:  (1) the underlying scientific theory must be
valid; (2) the technique applying the theory must be valid; and (3) the
technique must have been properly applied on the occasion in question.  Russeau
v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); Kelly, 824
S.W.2d at 573. 

The
record shows that the trial court conducted a hearing outside the jury’s
presence to determine the admissibility of the testimony of the State’s DNA
expert, Brent Wayne Watson. At the hearing, Watson, who is a forensic scientist
in the DNA unit of the Texas Department of Public Safety crime lab in Waco,
testified regarding his qualifications and experience in analyzing DNA
evidence.  Watson testified that he used the STR technique for DNA analysis,
that the STR technique was recognized as scientifically valid by an
overwhelming majority in that field, that he ran two tests in this case using
commercial kits based upon the STR technique, and that all procedures and
protocols were followed in this case.  Watson testified that the kits have been
validated by the DPS for use in all types of DNA samples, including samples
like the one in the present case where there is a low quantity of DNA present in
the sample.  According to Watson, the DNA analysis in this case met the
threshold required for validation.  At the conclusion of the hearing, the trial
court ruled that Watson’s testimony would be permitted.[1] 
We find no abuse of discretion in this ruling because the State met its burden
under Kelly.  Appellant’s fourth issue is overruled.  

            The
judgment of the trial court is affirmed.  

 

 

                                                                                                JIM
R. WRIGHT

April 7, 2011                                                                           CHIEF
JUSTICE

Do not publish. 
See Tex. R. App. P.
47.2(b). 

Panel consists of:  Wright, C.J.,

Strange, J., and Hill, J.[2]









[1]Watson subsequently testified that the DNA sample in
question was obtained from a blood smear on a water filtration unit that was
inside the bathroom where the perpetrator had apparently entered the house
through a window.  The results of Watson’s tests revealed that the probability
of someone other than appellant being the contributor of the DNA was one in
825.8 million Caucasians, one in 10.35 billion Blacks, and one in 15.52 billion
Hispanics.

 





                [2]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.